**In re: Charles Robert ROSS & Cynthia J. Ross, Debtors.**

**No. 06–10199.**

United States Bankruptcy Court, W.D. Tennessee, Eastern Division.

June 23, 2006.

F. Michael Bursi, Memphis, for Regions
Financial Corporation successor by merg-

er to Union Planters Bank, N. A., F. Michael Bursi, Creditor.

Harold F. Johnson, Jackson, for Merchants & Planters Bank, Bolivar, Creditor.

Harris P. Quinn, Morgan Keegan Tower # 1065, Memphis, for General Motors Acceptance Corporation c/o Semperian, Inc., Bankruptcy Department, Roseville, MN, Creditor.

Lloyd A. Utley, Jackson, for Charles Robert Ross, Mercer, Debtor.

## MEMORANDUM OPINION AND ORDER RE: OBJECTION TO CONFIRMATION BY GMAC

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on GMAC's Objection to Confirmation on May 4, 2006. FED. R. BANKR. P. 9014. Resolution of this matter is a core proceeding. 28 U.S.C. § 157(b)(2). The Court has reviewed the testimony from the hearing and the record as a whole. This Memorandum Opinion and Order shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR. P. 7052.

## I. FINDINGS OF FACT

At the hearing in this matter, the parties submitted the following Stipulations to the Court (exhibit 1):

1. GMAC is a creditor of the Debtors under a Retail Installment Sale Contract dated September 27, 2004, whereunder the Debtors purchased a 2004 Chevrolet Tahoe for their personal use.

2. Under the Contract, the Debtors were to make 72 payments of $556.33 each beginning October 27, 2004. The contract is in default for the December 27, 2005 through April 27, 2006 installments. The total delinquency is $2,663.08

3. The contractual interest rate is 0.00%.

4. The contract grants GMAC a security interest in the Tahoe, which security interest is a purchase money security interest.

5. GMAC's security interest is perfected by notation of its lien on the Certificate of Title.

6. GMAC's claim falls within the parameters of the "hanging paragraph" of Section 1325(a).

7. GMAC has filed its Proof of Claim for $32,350.57.

8. In their original Chapter 13 Plan, the Debtors proposed to treat GMAC as secured for $20,000 to be paid at the rate of 8% per annum in payments of $406.00 per month through the Chapter 13 Trustee.

9. GMAC timely filed an Objection to Confirmation.

10. Subsequently, Debtors filed an Amended Chapter 13 Plan wherein they propose to treat GMAC as fully secured for $32,350.57 to be paid at the contractual interest rate of 0.00% in payments of $558.00 per month through the Chapter 13 Trustee.

11. Debtors agree that GMAC's Objection to Confirmation shall apply to the Amended Plan.

12. Debtors assert that they are entitled to contract rate of interest.

13. GMAC asserts that Debtors are not entitled to contract rate of interest.

14. If debtors are not entitled to contract rate of interest, then the parties agree that GMAC's claim should be paid at the rate of 9.5% per annum over sixty (60) months.

## II. CONCLUSIONS OF LAW

In seeking confirmation of a chapter 13 plan, § 1325(a)(5) of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") requires a debtor to satisfy one of three conditions with respect to "each allowed secured claim." The creditor must accept the plan, 11 U.S.C. § 1325(a)(5)(A); the debtor must surrender the collateral, 11 U.S.C. § 1325(a)(5)(C); *or* the plan must provide that the secured creditor retains the lien for a specific period of time [1] and:

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the term of the plan;

11 U.S.C. § 1325(a)(5)(B). BAPCPA's § 1325(a) also contains what is commonly referred to as a "hanging paragraph" which appears directly after subsection (a)(9). This paragraph provides that:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists

of any other thing of value, if the debt was incurred during the 1–year period preceding that filing;

11 U.S.C. § 1325. Section 506 provides that an allowed claim is secured "to the extent of the value" of the creditor's interest in the property. 11 U.S.C. § 506(a).

Prior to enactment of BAPCPA and the addition of the hanging paragraph, debtors were able to use 11 U.S.C. §§ 506(a) in conjunction with 11 U.S.C. § 1322(b)(2) to bifurcate some secured claims into secured and unsecured portions. Debtors could "strip down" the secured portion of a claim to the value of the collateral. Any amount the debtor owed above and beyond the value of the collateral would be included in the chapter 13 plan as an unsecured claim.

■ Since the addition of the hanging paragraph in § 1325(a), courts have been faced with the question of whether or not debtors are still able to bifurcate and strip down purchase money secured claims on vehicles bought within 910 days of the filing of the petition. The majority of the Courts interpreting this subsection have concluded that the answer to that question is "no." *Montgomery*, 341 B.R. 843, 2006 WL 1331532, *1; *In re Montoya*, 341 B.R. 41, 44 (Bankr.D.Utah 2006); *In re Johnson*, 337 B.R. 269, 272 (Bankr.M.D.N.C. 2006); *In re Robinson*, 338 B.R. 70, 73 (Bankr.W.D.Mo.2006); *In re Wright*, 338 B.R. 917, 919–20 (Bankr.M.D.Ala.2006); *In re Scruggs*, 342 B.R. 571, 2006 WL 1525852, *2 (Bankr.E.D.Ark.2006); *In re Brown*, 339 B.R. 818, 820 (Bankr.S.D.Ga. 2006). This Court agrees with those conclusions and hereby finds that debtors may not bifurcate and strip down purchase money secured claims on vehicles bought within 910 days of the filing date. Debtors wishing to retain such vehicles over the objection of the creditor must provide for

---

1. *See* 11 U.S.C. § 1325(a)(5)(B)(i).

payment of the entire amount of the creditor's allowed claim.

In the case at bar, the parties agree that the debtor may not bifurcate the claim into secured and unsecured portions. The debtors have proposed to pay the full value of GMAC's claim as of the filing date of the case. What is at issue in this case is the rate of interest the debtor should be required to pay to GMAC on its claim. The debtors argue that they should be entitled to the benefit of the contractual interest rate of 0%. GMAC, on the other hand, argues that the U.S. Supreme Court case of *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), still applies and that the debtors are not entitled to the contract rate of interest.

■ Prior to enactment of BAPCPA, § 1325(a)(5) was fairly similar to its revised version. It provided that a court should confirm a plan if (1) the creditor accepts the plan, (2) the debtor surrenders the collateral or (3):

> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

11 U.S.C. § 1325(a)(5) (1998). This last option was typically referred to as "cramdown" because a court could force a creditor to accept the treatment under this subsection even if the creditor objected to confirmation. Congress did not alter the fundamental principles of the cramdown provision when it enacted BAPCPA. Instead, what it did was to make the requirements of § 1325(a)(5)(B) more definitive by (1) specifying a time period for the lien retention, (2) adding a requirement that installment payments have to be in "equal monthly amounts," and (3) mandating that

if the claim is secured by personal property, the debtor must pay the creditor an amount sufficient to provide the creditor with adequate protection during the plan period. 11 U.S.C. § 1325(a)(5) (2005). The revisions under BAPCPA did not alter the basic requirement under § 1325(a)(5)(B)(ii) that a debtor must provide the creditor with value that is not less than the allowed amount of the claim.

In deciding what was the appropriate method was for ensuring creditors receive the present value of their claim when a debtor was proposing to pay a debt in installments over a period of years rather than in a lump sum payment, courts developed four approaches: (1) "prime-plus" or "formula" rate; (2) "coerced loan" rate; (3) "presumptive contract" rate; and (4) "cost of funds" rate. In the case of *Till v. SCS Credit Corporation*, the U.S. Supreme Court was asked to decide which of these four calibration methods was the correct one to use under 11 U.S.C. § 1325(a)(5)(B)(ii). The *Till* Court stated that in deciding this issue a court needed to first and foremost consider the fact that:

> [a] debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment. The challenge for bankruptcy courts reviewing such repayment schemes, therefore, is to choose an interest rate sufficient to compensate the creditor for these concerns.

*Id.*, 124 S.Ct. at 1958. The *Till* Court went on to state that to decide what interest rate would be sufficient, a court needed to consider three things: (1) numerous provisions of the Bankruptcy Code require a court "to ensure that a creditor receives at least the value of its claim;" (2) "Chap-

ter 13 expressly authorizes a bankruptcy court to modify the rights of any creditor whose claim is secured by an interest in anything other than 'real property that is the debtor's principle residence;'" and (3) "the cramdown provision mandates an objective rather than a subjective inquiry." *Id.*, 124 S.Ct. at 1959.

After reviewing each of the methods, the Court concluded that the "prime plus" or "formula" rate best satisfied the considerations a court must take into account when ruling on an appropriate interest rate:

> Thus, unlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor.

*Id.*, 124 S.Ct. at 1961. The Court concluded that the other approaches contained three significant defects: (1) they were complicated: (2) they imposed significant evidentiary costs; and (3) they each were more concerned with making the creditor whole rather than making sure the debtor pay the present value. *Id.* at 1960. The formula or prime-plus approach had none of these problems. "[T]he formula approach entails a straightforward, familiar and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings." *Id.* at 1961.

Although *Till* was decided prior to BAPCPA's enactment, the majority of courts interpreting the correct interest rate to apply under the revised § 1325(a) have held that *Till's* prime-plus mandate

still applies. *In re Wright*, 338 B.R. 917 (Bankr.M.D.Ala.2006); *In re Fleming*, 339 B.R. 716 (Bankr.E.D.Mo.2006); *In re Brown*, 339 B.R. 818 (Bankr.S.D.Ga.2006); *In re DeSardi*, 340 B.R. 790 (Bankr.S.D.Tex.2006); *In re Johnson*, 337 B.R. 269 (Bankr.M.D.N.C.2006); *In re Shaw*, 341 B.R. 543 (Bankr.M.D.N.C.2006); *In re Robinson*, 338 B.R. 70 (Bankr.W.D.Mo. 2006); *In re Scruggs*, 342 B.R. 571, 2006 WL 1525852 (Bankr.E.D.Ark.2006); *In re Pryor*, 341 B.R. 648 (Bankr.C.D.Ill.2006). There are two main reasons for these holdings. First, "BAPCPA made no changes to the language requiring that the secured creditor receive the present value of its claim," nor did the BAPCPA amendments address the appropriate interest rate; therefore, *Till* has not been abrogated. *Fleming*, 339 B.R. at 721; *Wright*, 338 B.R. at 920; *DeSardi*, 340 B.R. at 814; *Shaw*, 341 B.R. at 547; *Scruggs*, 342 B.R. 571, 2006 WL 1525852 at *3. Secondly, "no provision of BAPCPA prohibits the modification of secured creditors' rights under § 1322(b)(2). Consequently, while the 910 Creditors are entitled to fully-secured claims, the applicable interest rate necessary to meet the present value requirement of § 1325(a)(5)(B)(ii) is governed by *Till* ...." *Brown*, 339 B.R. at 822; *Johnson*, 337 B.R. at 273; *Robinson*, 338 B.R. at 75.

After having reviewed the relevant case law and the statutory language of §§ 506, 1322 and 1325, this Court agrees with the majority holding that the BAPCPA amendments have no impact on the *Till* decision regarding interest rates. The hanging paragraph in § 1325 does nothing more than to prohibit a debtor from bifurcating a purchase money secured claim on a vehicle bought within 910 days of the filing of the petition. As stated supra herein, the amendments to § 1325(a)(5)(B) did not alter the fundamental requirement

that a debtor pay the present value of a secured claim. There is simply nothing in any of the statutory amendments which suggests Congress meant to abrogate the Supreme Court's *Till* decision.

The debtors in this case asserted that *Till* does not apply to cases filed under BAPCPA because *Till* contemplated paying for a vehicle based on its current value. Under BAPCPA, a debtor must now pay for a vehicle purchased within 910 days of the filing of the petition in accordance with the full value of the claim. Whether or not a debtor proposes to pay for a vehicle at its current value or based on the total amount owed, he is still proposing to pay for it over time. It is the fact that the debtor is spreading payments out over a period of months rather than making a lump sum payment that necessitates payment of interest. The amount he proposes to pay has no impact on that requirement. Accordingly, this Court finds that the formula or prime-plus rate selected by the Supreme Court in *Till* still controls the interest rate to be paid under § 1325(a)(5)(B) when a debtor proposes to make monthly installments rather than a lump sum payment on a secured debt.

The debtors have also asserted that they are entitled to the contract interest rate of 0% because they are only attempting to modify the contract slightly; however, according to the terms of the plan, the debtors are proposing to both cure the default and pay the balance of the claim over the life of the plan. The original contract would have expired prior to the end of the plan in this case. In the case of *In re Pryor*, 341 B.R. at 651–52, the Bankruptcy Court for the Central District of Illinois recognized that:

> Any plan that modifies a secured creditor's rights over the creditor's objection is a cram down that triggers the application of Section 1325(a)(5)(B)(ii). A plan

proposing to pay a secured creditor's claim on an unmodified basis, in full according to the terms of the contract by direct payments from the debtor to the creditor, is not a cram down. In that event, the creditor would be stuck with the contract rate of interest no matter how long it was. Here, however, although FMCC's claim is not being stripped down, the payment stream is being modified. That is enough to trigger the present value requirement of § 1325(a)(5)(B)(ii).

*Id.* Regardless of the fact that the debtors in the case at bar are paying GMAC the entire amount of their allowed claim, they are still proposing to modify the "stream of payments." They are going to be paying GMAC a slightly higher monthly payment to cure the previous default and they are going to pay GMAC's claim over the life of the plan rather than the life of the contract. These slight modifications trigger § 1325(a)(5)(B)(ii) and the debtors must therefore pay interest at the *Till* rate. In accordance with 11 U.S.C. § 1322(b)(2), the debtors are entitled to pay the balance of the claim over the life of the plan.

### III. ORDER

It is therefore **ORDERED** that GMAC's Objection to Confirmation is hereby **SUSTAINED**. The debtors shall have fifteen days to modify their plan to provide GMAC with 9.5% interest.

**IT IS SO ORDERED.**